IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD J. SHAWLEY AND ) <br> JANE E. SHAWLEY, ) <br> 172 Allbaugh Park Road ) <br> Johnstown, PA 15909, ) <br>           Plaintiffs, ) <br>   v. ) <br> ) <br> SUNOCO PIPELINE L.P. ) <br> 8111 Westchester Drive, Suite 600 ) <br> Dallas, TX 75225, ) <br>           Defendants. ) | Civil Action No.: 3:22-CV-239 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs Ronald J. Shawley and Jane E. Shawley, by and through their undersigned counsel, file this Complaint against Defendant Sunoco Pipeline L.P. and in support thereof, aver as follows:

**Introduction**

1. This is an action brought by Plaintiffs who are residents and owners of property located in Johnstown, Cambria County, Pennsylvania. Their claims are premised on (a) private, temporary, continuing, abatable nuisance; and (b) negligence/recklessness against Defendant Sunoco Pipeline L.P. Plaintiffs have suffered injuries and sustained damages arising from Defendant's natural gas pipeline construction and associated activities as described more fully below.

2. As more fully set forth below, Plaintiffs' quality of life has been negatively impacted to such a significant extent that they are no longer able to use and enjoy their home and property in the way they previously enjoyed prior to Defendant's acts and/or omissions.

3. Such wrongful conduct is not new for Defendant Sunoco Pipeline, L.P.

4.     On 8/5/2022, Pennsylvania Attorney General Josh Shapiro, in relevant part, indicated

> "…that **Sunoco Pipeline L.P.**, and ETC Northeast Pipeline LLC (ETC), both subsidiaries of Energy Transfer, L.P. (Energy Transfer), **were convicted of criminal charges** related to their conduct during the construction of two major pipelines in Pennsylvania. Mariner East 2 Pipeline, which crosses 17 counties in the southern tier of Pennsylvania, and Revolution Pipeline, a 42.5 mile pipeline that starts in Butler County, and is routed through Beaver and Allegheny counties, and connects to a gas processing plant in Washington County.
>
> [**emphasis added**]
>
> *****
>
> We have a constitutional right in Pennsylvania to clean air and pure water," **said AG Shapiro.** "It's a right that was enshrined in our state constitution at a time when the people of Pennsylvania learned a tough lesson first-hand — the health of our children, and our economic future, depended on protecting our environment from reckless profit and unchecked corporate interests. Today we're upholding our oath to our constitution and holding Energy Transfer accountable for their crimes against our natural resources."
> Following an investigation by the Office of Attorney General Environmental Crimes Section and recommendations from the 45th Statewide Investigating Grand Jury, **Sunoco Pipeline L.P. was charged with 48 counts of environmental crimes for their conduct during the construction of the Mariner East 2 Pipeline**…"
>
> [**emphasis added**]

*See* https://www.attorneygeneral.gov/taking-action/case-update-energy-transfer-convicted-of-criminal-charges-related-to-construction-of-mariner-east-2-pipeline-revolution-pipeline-in-pennsylvania/

5.     In this current matter, Defendant's actions have rendered the Plaintiffs' household nearly uninhabitable, forcing Plaintiffs to live with regular flooding of their home, often with raw sewage from a compromised septic system, and the resulting damage to household appliances, furniture, walls and floors and a lack of access to clean, potable groundwater.

6.     Despite the ongoing injuries to Plaintiffs clearly caused by Defendant's actions as documented by both local and state officials, as well as expert hydrologists, Defendant has refused to take adequate actions to remedy the ongoing harm to Plaintiffs, thereby forcing the

filing of this complaint.

## Parties

7. Plaintiff Ronald J. Shawley is an adult individual who resides with his wife at 172 Allbaugh Park Road, Johnstown, Cambria County, PA 15909.

8. Plaintiff Jane E. Shawley is an adult individual who resides with her husband at 172 Allbaugh Park Road, Johnstown, Cambria County, PA 15909.

9. Plaintiff Ronald J. Shawley and Plaintiff Jane E. Shawley are husband and wife and shall be collectively referred to as "Plaintiffs" herein.

10. Defendant Sunoco Pipeline L.P. ("SPLP") is a wholly-owned subsidiary of Energy Transfer LP. SPLP is organized and exists under the laws of the state of Texas. SPLP is headquartered in Dallas, TX at 8111 Westchester Drive, Suite 600, Dallas, TX 75225. SPLP is registered to conduct business within the Commonwealth of Pennsylvania as a Foreign Limited Partnership under the following entity number: 3047391.

11. SPLP operates numerous pipelines, including the Mariner East 2 ("ME2") pipeline, and conducts a substantial portion of its business in Pennsylvania.

## Subject Matter Property

12. The Subject Matter Property is located at 172 Allbaugh Park Road, Johnstown, Cambria County, PA 15909 ("Shawley Property" or "Subject Matter Property").

13. Plaintiffs own the Subject Matter Property.

## Jurisdiction and Venue

14. Given the nature of their injuries and damages, Plaintiffs seek to recover an amount in excess of $150,000.00 as set forth in their claims (counts) below.

15. Jurisdiction is proper in the United States District Court for the Western District of

Pennsylvania under 28 U.S.C. § 1332(a)(1) since (a) there exists complete diversity of citizenship between the parties; and (b) the amount in controversy exceeds $75,000.  23. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

16. Venue is proper pursuant to 28 U.S.C. §1391 in so far as the following alleged unlawful conduct that forms the factual and legal bases of this Complaint occurred within the geographical limits of this District.

**Factual Allegations**

17. Plaintiffs incorporate by reference and re-allege all prior paragraphs of the Complaint as if fully set forth herein.

18. Plaintiffs have possessory interests in property in Cambria County, PA.

19. Specifically, Plaintiffs use the Shawley Property as their primary residence and for work and recreational activities, as well as a donation center for military veterans and a base to provide them with support services.

20. Since living in Cambria County, Plaintiffs had come to expect and enjoy the quiet, fresh air, fresh water, privacy, and overall peacefulness of the area.

21. The Shawley Property is serviced with a private water supply well and a private on-lot septic system.

22. Plaintiffs rely on their private water supply for drinking, bathing, cooking, washing and/or other daily residential uses.

23. Plaintiffs rely on their private on-lot septic system for residential sewage disposal and removal.

24. In or around June 2017, SPLP constructed, or caused to be constructed the Mariner East II pipeline ("ME2") on and in close proximity to the Shawley Property. The ME2 is an

underground natural gas (petroleum) pipeline extension of Defendant's Mariner East I pipeline. As part of the construction activities, Defendant also drilled a horizontal borehole ("HDD Borehole") on the Shawley Property.

25. Prior to commencing construction activities for construction and installation of ME2 on the Shawley Property, SPLP never conducted any safety briefing for the benefit of Plaintiffs.

26. During ME2's construction and installation activities, over sixty (60) large trees were removed from the Shawley Property along with some trees associated with the ME2 pipeline construction area.

27. SPLP removed so many trees from the Shawley Property that several remaining trees were subsequently knocked down by exposure to winds. Ultimately, these falling tress fell into Koi and goldfish ponds which Plaintiff Ronald Shawley had self-constructed and self-maintained. All of Plaintiffs' fish died and the ponds were completely destroyed.

28. The foregoing 60-cut trees were laid down in three (3) piles around the Shawley Property.

29. The ME2 pipeline system and the associated HDD Borehole traverse the Shawley Property and are within 25 feet of Plaintiffs primary residence and private residential well.

30. Sewage from Plaintiffs' residence is discharged to a septic holding tank located south of their house. At that point, solids are separated from liquids and, thereafter, the liquids move through a discharge line into a leach field located northeast of the site.

31. The access area used for ME2 pipeline construction vehicles and maintenance and support vehicles is within 15 feet of Plaintiffs' house, private water well and also overlies a portion of their septic system, including the septic-discharge line and its associated leach field.

32. The active access areas for construction vehicles during the ME2 pipeline project and its

servicing overlapped with a portion of the septic discharge line and its associated leach field.

33. In addition, the pipeline runs directly under Plaintiffs' septic discharge line.

34. During the construction activities, Plaintiffs' well water became turbid as a result of the Defendant's HDD Borehole drilling methodologies.

35. Upon informing Defendant of the foregoing damages and as a result of Defendant's wrongdoing, SPLP provided a temporary water supply tank system to Plaintiffs' residence in an attempt to establish potable water supply. This tank is located on the north side of the residential house.

36. At present, Plaintiffs' water well no longer contains any water.

37. In addition to the lack of water, a sewage-odor has permeated into Plaintiffs' water well.

38. The permeation of the sewage-odor into the water well occurred due to SPLP operating their ME2 construction vehicles over Plaintiffs' septic system and causing damage directly thereto.  These foregoing activities conducted by SPLP caused Plaintiffs' septic system to be damaged in various capacities.

39. The ME2 pipeline and its related installation work on and around the Shawley Property was completed in or around October, 2018.

40. Since SPLP's ME2 pipelines activities have ended, Plaintiffs have suffered an ongoing series of hydrological problems and property damage, including an inability to use their well water supply for every day needs, frequent flooding of the foundation and interior of their home, sewage backups and discharges of sewage from sinks, sewage contamination of kitchen countertops, cabinets and floors and a regular, persistent sewage odor in their water supply and surrounding airway.

41. In specific instances, as depicted below, raw sewage comes upward through the

Shawley's kitchen sink and spills throughout their kitchen.



42.     During a subsequent water test, SPLP pumped contaminated groundwater throughout the house, causing damage to water-connected appliances such as the refrigerator, water heater and washing machine.

43.     Approximately one year after ME2 pipeline construction activities ended, a large subsidence occurred on the Shawley Property directly above the HDD Borehole. The subsidence was approximately 10 feet across and three to four feet deep.

44.     In response to the foregoing property damage, SPLP filled the subsidence with a concrete mixture.

45.     After a site visit to and inspection of the Shawley Property in 2021 by Township officials, the Sewage Enforcement Officer (SEO) for Jackson Township indicted in a letter to Plaintiff Ronald Shawley that the ME2 pipeline activities compromised the integrity of Plaintiffs' septic system which resulted in contamination of their water well.

46.     In addition to identifying the nature, extent and cause of the damages, the SEO also

indicated that there was no suitable area on the Shawley Property to install a new on-lot septic system.

47. In an 11/5/21 email from the Pennsylvania Department of Environmental Protection (PADEP) to an Energy Transfer representative, the PADEP indicated that it had reviewed a report submitted to them on 10/15/21 concerning Plaintiffs' water. In doing so, the PADEP concluded that: "[b]*ased on the information submitted, there is evidence that the* **SPLP Mariner East 2 pipeline construction activities impacted the water source**." [**emphasis added**]

48. Said PADEP correspondence continued: "[i]*n accordance with Water Obstruction and Encroachment Permit E11-352, Special Condition A.2, SPLP should implement a contingency plan, to the satisfaction of the private water supply owner that addresses all adverse impacts imposed on the private water supply as a result of the pollution event, including the restoration or replacement of the impacted water supply*."

49. To date, SPLP has done nothing to fully restore or adequately replace Plaintiffs' impacted water supply.

50. The PADEP conducted an Earth Disturbance Inspection on 1/10/22 and produced a report noting a number of failures by SPLP to comply with the pipeline permit issued for construction of the ME2 pipeline as it relates to the Shawley Property. In doing so, the PADEP concluded that site conditions observed by PADEP constituted a violation of 25 Pa. Code Chapters 92a and/or 102 and Clean Streams Law, the act of June 22, 1937, P.L. 1987, 35 P.S. Section 691.1 et seq.

51. Specifically, the PADEP provided Compliance Assistance Measures recommending that SPLP do the following:

        a. take soil probes across the Right of Way on Plaintiffs' property to determine top soil depth and replace top soil to meet minimum depth requirements;

    b. probe Plaintiffs' property to identify buried waste material and remove such waste from the site;

    c. take steps necessary to remove standing water condition on the road;

    d. implement a permanent solution to the well water quantity and quality inadequacies;

    e. assess the condition of Plaintiffs' French drain discharge pipe and repair as necessary.

52. To date, SPLP has failed to facilitate and/or initiate and/or perform any of foregoing recommendations made to them by PADEP in an effort to remedy the ongoing issues related to the Shawley Property and/or Plaintiffs' inability to use and enjoy their home and its surrounding property.

53. Equally, the PADEP has not taken any steps to afford Plaintiffs any relief from the ongoing injuries which they have suffered at the hands of SPLP's abject wrongdoing.

54. At a minimum, neither SPLP nor DEP have taken any measures whatsoever to prevent raw sewage from coming through Plaintiffs' sinks and disseminating throughout their kitchen; nor have they ever offered to remediate such an egregious, disgusting condition and/or compensate Plaintiffs for remediation.

55. SPLP deployed its own engineering consultants to the Shawley Property to conduct an inspection and determine the feasibility of providing Plaintiffs with a functioning drinking water and septic system. Upon information and belief, that inspection, and prior ones conducted by SPLP, confirm that its ME2 pipeline construction activities have detrimentally impacted the Plaintiffs' well water and septic system.

56. Despite knowledge of the injuries suffered and damages sustained by Plaintiffs, SPLP has taken no reasonable measures to remedy the ongoing injuries to Plaintiffs caused by its actions.

57.     As a result of SPLP's wrongdoing relating to their natural gas pipeline-related activities on and/or in close proximity to the Shawley Property, Plaintiffs have suffered and continue to suffer significant injuries, including to their rights to the use and enjoyment of their property and damage to their primary residence for which they are entitled to compensation.

## COUNT I
## PRIVATE NUISANCE

58.     Plaintiffs incorporate by reference and re-allege all prior paragraphs of the Complaint as if fully set forth herein.

59.     Defendant SPLP, by its acts and/or omissions, including those of its officers, agents, contractors, and/or employees, including the improper ownership, construction, control, operation, and maintenance of its ME2 pipeline on and/or in close proximity to the Shawley Property, has caused, created, and maintained unreasonable, private, temporary, continuing, and abatable invasions of Plaintiffs' use and enjoyment of their property.

60.     Defendant SPLP, by its acts and/or omissions, including those of its officers, agents, contractors, and/or employees has negligently, recklessly, knowingly, intentionally, or otherwise intermittently and unreasonably impaired Plaintiffs' private use and enjoyment of their property by improperly engaging in natural gas activities and causing, but not limited to, the following conditions:

   a. drilling fluids and drilling activity from the ME2 pipeline construction resulted in significant turbidity in Plaintiffs' water supply; and

   b. construction vehicles, associated with the ME2 pipeline construction activities, damaged Plaintiffs' on-lot septic system causing a release of sewage waste that continues to contaminate Plaintiffs' water supply.

61.     As a direct and proximate result of SPLP's acts and/or omissions in the construction and maintenance of its pipeline, Plaintiffs have suffered the following:

a. inability to use their water supply for drinking and other household activities;

b. substantial discomfort;

c. annoyance;

d. offense to the senses;

e. angst, anxiety, distress, disgust, embarrassment, fear, and concern;

f. difficulty sleeping;

g. health concerns, including, but not limited to increased intermittent sinus issues, headaches, burning eyes, rashes, coughing, diarrhea, abdominal pain, fever, and intermittent fatigue;

h. destruction of personal property; and

i. concern for, and actual intermittent degradation of soil, water and air quality; for which Plaintiffs are entitled to compensation.

62. Defendant SPLP, including its officers, agents, and/or employees knew or was substantially certain that its pipeline construction activities on Plaintiffs' property and in such close proximity to Plaintiffs' residence, water well and septic system would create and maintain a continuing nuisance to Plaintiffs.

63. Each of the above injurious conditions created by Defendant SPLP is reasonably and practicably abatable through better operation, procedures, management, repair, technology, oversight, maintenance, or otherwise.

64. Despite having knowledge of the harmful effects of its activities, Defendant SPLP has failed to take known reasonable, practicable, and necessary steps to warn of, abate, minimize, or eliminate such conditions.

65. Defendant SPLP's use of property and the impairment to Plaintiffs' use and enjoyment of their property has been and continues to be unreasonably and abnormally dangerous.

66. As a result, Defendant SPLP is liable for all of the damages and injuries to the Plaintiffs

caused by its acts and/or omissions and natural gas pipeline construction activities and its failure to abate such nuisance.

67.     Defendant SPLP knew, or should have known, that its conduct described herein, including, but not limited its ME2 pipeline construction activities on the Shawley Property and in such close proximity to Plaintiffs' residence, water well and septic system, has and continues to cause frequent and significant injury to Plaintiffs, their properties, their property rights as well as Plaintiffs' quiet use and enjoyment of their properties.

68.     Further, some or all of the acts and/or omissions of Defendant SPLP described herein, including those of its officers, agents, contractors, and/or employees, were intentional or gross, reckless or wantonly negligent and were done with full knowledge of an utter disregard for the Plaintiffs' rights, property, safety, and well-being.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment against Defendant SPLP in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Western District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT II
## NEGLIGENCE

69.     Plaintiffs incorporate by reference and re-allege all prior paragraphs of the Complaint as if fully set forth herein.

70.     Defendant SPLP, at all times relevant herein, owed the following, but not limited to the following, duties of reasonable care to Plaintiffs:

> a. to reasonably and responsibly construct, own, operate, control, and maintain its pipeline so as not to injure Plaintiffs or otherwise impair their use and enjoyment of their properties;

    b. to take all measures reasonably necessary to inform and protect Plaintiffs from dangerous and/or unreasonable pipeline construction activities;

    c. to warn of the conditions and harms that its pipeline construction activities might, would, or do cause Plaintiffs;

    d. to mitigate the impacts of its pipeline construction activites, including as the relate to excessive odors and damages to Plaintiffs' water well and septic system;

    e. to follow all regulations, laws, and requirements applicable to their activities;

    f. to design and maintain safe and responsible pipeline construction activities, taking such steps as are necessary to prevent the impacts on the Plaintiffs property and to their residence;

    g. the aforementioned list is by no means exhaustive or exclusive, and Plaintiffs do not waive their ability to submit additional evidence of additional duties throughout the course of this case.

71. Defendant SPLP, including its officers, agents, contractors, and/or employees, has frequently breached these duties of care to Plaintiffs or was otherwise negligent and thereby is/was directly and proximately causing significant damages to Plaintiffs, for which they are entitled to compensation.

72. Defendant SPLP, including its officers, agents, and/or employees, should have taken reasonable precautions and measures to prevent and/or mitigate the problems caused by its activities.

73. As a direct and proximate result of Defendant SPLP's acts and omissions stated herein, Plaintiffs have suffered damages for which they are entitled to compensation.

74. Defendant SPLP, including its officers, agents, and/or employees, knew or in the exercise of reasonable care should have known, that such problems caused by its negligent and reckless conduct, and the resultant harm to Plaintiffs and their properties were foreseeable consequences of Defendant SPLPs acts and/or omissions in the manner in which it engaged in

its ME2 pipeline construction activities.

75.     Defendant SPLP's acts and omissions, including those of its officers, agents, contractors, and/or employees were the direct and proximate cause of the damages to Plaintiffs alleged herein.

76.     Defendant SPLP knew, or should have known, that its conduct described herein, including, but not limited to the improper pipeline construction activities relating to ME2, had and continues to cause frequent and significant injury to Plaintiffs, Plaintiffs' properties; and Plaintiffs' property rights.

77.     Further, some or all of the acts and/or omissions of Defendant SPLP described herein, including those of its officers, agents, contractors, and/or employees, were intentional and/or grossly, recklessly, and/or wantonly negligent, and were done with utter disregard for the Plaintiffs' rights, properties, safety, and well-being.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment against Defendant SPLP in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Western District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

- 15 -

Date: <u>12/14/22</u>

        KOTSATOS LAW PLLC

        */s/ John E. Kotsatos*

By:   John E. Kotsatos, Esquire
       PA Identification No.: 92807
       717 Washington St.
       Easton, PA 18042
       Phone: 484-403-6214
       Fax: 610-438-6351
       Email: jk@lawjek.com

*Counsel for Plaintiff*